UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                            Case No. 05-CR-205

**JOHN NOWAK**
        Defendant.

---

### SENTENCING MEMORANDUM

Defendant John Nowak pleaded guilty to selling a firearm to a person he knew was a felon, contrary to 18 U.S.C. § 922(d). The probation office prepared a pre-sentence report ("PSR"), which calculated his offense level as 12 (base level 14, U.S.S.G. 2K2.1(a)(6)(B), minus 2 for acceptance of responsibility, § 3E1.1) and his criminal history category as I, producing an imprisonment range of 10-16 months under the advisory sentencing guidelines.

Defendant requested a probationary sentence, while the government argued for a sentence within the range. Upon consideration of the submissions and arguments, I decided to impose a non-guideline sentence of three years probation with a condition of six months home confinement. In this memorandum, I set forth more fully the reasons for the sentence imposed.

### I. SENTENCING FACTORS

In imposing sentence, I consider the factors set forth in 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

My ultimate task is, after considering all of the above circumstances, to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in sub-section (2). 18 U.S.C. § 3553(a).

## II. CONSIDERATION OF FACTORS

### A. Nature of Offense

In September 2001, defendant sold a handgun to a confidential informant he knew was a felon. This was obviously a very serious offense. Conduct such as this defeats society's efforts at gun control and, in some cases, leads to violence.

However, this particular case was not aggravated. Defendant sold just one gun for $500, there was nothing particularly dangerous about the gun (e.g., it was not high

2

capacity, and it did not have a silencer or other added equipment), defendant had no indication that the buyer intended any harm with the gun, and the gun was immediately turned over to law enforcement. Further, there was no evidence that defendant was in the business of selling guns, and this was not even his gun to begin with. Defendant possessed it as collateral for a loan he made to a friend, which the friend did not repay. Finally, the offense occurred in 2001, and defendant had been in no trouble in the more than four years since then. Likewise, he had no violations on pre-trial release, and all of his drug tests were negative.

**B.    Character of Defendant**

At the time of sentencing, defendant was 29 years old, with no criminal record and a solid employment history. Although he dropped out of high school, the PSR indicated that he had worked steadily since the age of 15. For the past eight years, he held the same job as a forklift driver, and according to letters received by the court, defendant was valued and respected by his union, supervisor and co-workers.

Defendant was a home-owner and lived with his fiancé and their children, two of whom were his biological children (ages three and one) and one of whom (age eight) was his fiance's child from a previous relationship, whom he considered his own. The evidence showed that he was a devoted and involved father, caring for his children while his fiancé worked the evening shift. Defendant's own family described him as caring and supportive. He rented units in the house he owned to his mother and his sister and her children at less than market rates to help them financially. The court received positive letters from his fiancé, mother, cousin, aunt and a former landlord.

3

Defendant was also involved in a car club called "Somosuno" – a multi-cultural and multi-ethnic group which included former gang members who showed their cars in the community and at car shows. The club was also involved in community activities, such as holding Christmas parties for school children and raising scholarship money for Hispanic students in connection with Fiesta Mexicana. Defendant expressed pride in his activities with the group.

The PSR indicated that defendant had significant health problems. He suffered a collapsed lung on three occasions and was treated for back pain due to a disc problem. In September 2004, he underwent surgery on his left rotator cuff. Finally, in May 2005 he injured himself at work, dropping a plate on his hand and tearing a ligament.

There was some indication that defendant had associated with (though not joined) a gang when he was younger, but he seemed to have left that behind. Likewise, he seemed to have overcome a problem with alcohol and had no current substance abuse issues.

**C.     Needs of Public and Victims**

Given his lack of record and his stable family and home life, defendant was not dangerous or a risk of re-offending. He did not appear to have any correctional treatment needs. No restitution was due, and no victims were harmed.

**D.     Advisory Guidelines**

The guidelines called for a term of 10-16 months, which fell within Zone C of the sentencing grid, allowing a split sentence of half institutional and half community confinement. I concluded that a sentence within that range was slightly greater than

4

necessary to satisfy the purposes of sentencing under the circumstances of this case. Instead, I found that a sentence served entirely in the community was sufficient but not greater than necessary.

First, given the mitigated nature of the offense, including the fact that just one gun was sold and defendant had no indication of its intended misuse, as well as the age of the offense, confinement in prison was not required to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Rather, I believed that home confinement coupled with a fine was sufficient to satisfy the need for punishment. See 18 U.S.C. §§ 3553(a)(1) & (a)(2)(A).

Second, there was no need to imprison defendant to protect the public. He was not dangerous and was a low risk of re-offending. Strict monitoring in the community was sufficient to serve this purpose. See § 3553(a)(2)(C). Nor, under the circumstances of this case, was imprisonment necessary to deter others. Defendant was now a convicted felon, and would be closely monitored and confined in the community for a substantial period. These consequences were sufficient to serve this purpose. See § 3553(a)(2)(B).

Third, a sentence of imprisonment would likely have caused defendant to lose the job he held for over eight years. Given his lack of education and health problems (and now his felony record), it seemed highly unlikely he would find comparable employment after a prison term. Imprisonment would also have harmed those who depended on defendant, financially and emotionally: his kids, his fiancé, and his mother and sister (and her five kids). The court can and should consider the collateral consequences in deciding the appropriate sentence. See, e.g., United States v. Norton, 218 F. Supp. 2d 1014, 1019 n.2

5

(E.D. Wis. 2002) (stating that court should consider consequences of sentence on defendant's dependents).

Finally, the guidelines did not account for defendant's positive personal qualities, including his support for his family, his solid employment record, his involvement with Somosuno, and his good conduct for the past four plus years.[1]  See, e.g., § 3553(a)(1); United States v. Ranum, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005).

### III.  SENTENCE

For all of these reasons, I imposed a sentence that was effectively 2 levels below the advisory range.  This placed defendant in Zone B of the Grid, allowing a sentence of probation and home confinement.  Probation was an available sentence for the offense of conviction.  See 18 U.S.C. §§ 3553(a)(3) & 3561(a).  Under all of the circumstances, probation with a lengthy term of home confinement was a sufficient sentence.  Because the sentence hewed closely to the advisory range and was strongly supported by the particular facts of the case, it did not create unwarranted disparity.  See § 3553(a)(6).

Therefore, I placed defendant on probation for a period of three years.  A found that a three year term provided sufficient monitoring to ensure that defendant did not re-offend

---

[1] When the guidelines were mandatory the court was discouraged from considering the defendant's employment record, community involvement and family circumstances. See U.S.S.G. §§ 5H1.2, 5H1.5, 5H1.6 & 5H1.11.  However, now that the guidelines are advisory, the court is required to consider such personal characteristics under § 3553(a)(1). See United States v. Newsom, 428 F.3d 685, 687 (7th Cir. 2005) ("Before Booker, the § 3553(a) factors could be considered only in limited circumstances; now the district courts must always consider these factors to determine if the advisory Guidelines range is appropriate."); United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005) ("Section 3553(a), unlike the guidelines themselves after Booker, is mandatory.").

6

and to allow him to fulfil the other obligations of his sentence. As a condition, I ordered that he serve a six month period of home confinement, with release for work.

I further decided to impose a fine to ensure that the need for just punishment was met. Based on his financial situation, defendant did not have the ability to pay a fine within the guideline range, but he did have the ability to pay a reduced fine over time. U.S.S.G. § 5E1.2(d)(2). Therefore, I imposed a fine of $500, payable at a rate of not less than $50 per month as condition of probation, with payments to commence the first month after completion of the home confinement portion of the sentence. Given his monthly cash flow and the absence of other financial obligations arising out of this offense, this payment schedule did not impose an undue burden on defendant or his family. §§ 5E1.2(d)(3), (4) & (5). This fine also helped defray the costs of supervision. § 5E1.2(d)(7). Finally, $500 was the amount defendant earned from the sale of the gun, which seemed a fair measure of the fine.[2] See § 5E1.1(d)(8).

Other conditions of the sentence appear in the judgment.

**SO ORDERED.**

Dated at Milwaukee, Wisconsin, this 21st day of February, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[2]The government did not seek recoupment of the "buy money" as a condition of supervision. See United States v. Daddato, 996 F.2d 903 (7th Cir. 1993). By imposing a $500 fine I, in effect, required defendant to disgorge the profits from this sale.